## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

TERRANCE D. CONNER,        )
     Plaintiff             )
                              )      Civil Action No. 3:07-00872
v.                          )      Judge Nixon/Brown
                              )
MICHAEL J. ASTRUE       )
Commissioner of Social Security,   )
     Defendant           )

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff supplemental security income (SSI) as provided under the Social Security Act. The case is currently pending on plaintiff's motion for remand for consideration of new evidence (Docket Entries Nos. 26-31) and motion for judgment on the administrative record (Docket Entry No. 21). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motions be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively applied for SSI on September 17, 2003, alleging an onset of disability as of May 3, 2003 (Tr. 52-55). At the time of filing, the Plaintiff alleged disability based on "prune belly syndrome," depression, severe migraines, and vision problems. (Tr. 66). This claim was denied initially and upon request for reconsideration (Tr. 25-27, 31-32). At

1

Plaintiff's request, an administrative law judge (ALJ) conducted a hearing on March 1, 2006.

(Tr. 281-305). Plaintiff, who was unrepresented, his mother, and his aunt testified at the hearing.

(Tr. 281-302). Also, Gordon Doss, a vocational expert, testified. (Tr. 303-305). On August 16,

2006, the ALJ issued a decision denying Plaintiff's claims for SSI (Tr. 14-19). The ALJ made

the following findings:

1.    The evidence fails to definitively establish that the claimant engaged in substantial gainful activity after filing his application on September 17, 2003.

2.    The claimant has a severe combination of impairments that include a Prune belly syndrome and mild depression, but he does not have an impairment or combination of impairments of the level of severity required by 20 CFR Part 404, Subpart P, Appendix 1.

3.    The claimant has not experienced any pain or other symptomatology of a disabling level of severity on an ongoing basis.

4.    The claimant retains the residual functional capacity to perform sedentary, unskilled work that involves lifting of no more than 10 pounds, allows for a sit or stand option, and has limited postural activities like bending.

5.    The claimant could perform his past work as a hand packer.

6.    The claimant is currently 30 years old, a younger individual.

7.    The claimant has a high school education or above.

8.    The claimant has performed some semiskilled work during his vocationally relevant past.

9.    The claimant, considering his residual functional capacity, age, education, and work experience, is not disabled pursuant to Section 416.969 of Regulations No. 16 and Rules 201.28-201.29 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4.

10.   Although the claimant cannot perform a full range of sedentary work, there are a significant number of jobs in existence in the economy which he could be expected to perform, such as general office clerk, receptionist/information clerk, and sedentary hand packer. The vocational expert indicated that there are over

2

165,000 of the named sample jobs in existence in the national economy; a significant number of jobs.

11.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time since filing his application on September 17, 2003. 20 CFR 416.920.

(Tr. 18).

The Plaintiff sought review of the ALJ's decision from the Appeals Council on August 28, 2006. (Tr. 279). The Appeals Council denied Plaintiff's request April 27, 2007, rendering that decision the final decision of the Commissioner. (Tr. 5-10).  On March 11, 2008, Plaintiff sent a letter to the Court which was construed as a motion for judgment on the administrative record. (Docket Entry No. 21).  Beginning October 7, 2008, Plaintiff sent letters to the court explaining, *inter alia,* that he had been diagnosed as HIV positive. (Docket Entries Nos. 26-36). The Magistrate Judge construed the Plaintiff's letters as a motion to remand for consideration of new evidence pursuant to the sixth sentence of 42 U.S.C. 405(g). (Docket Entry No. 33).

## II. REVIEW OF THE RECORD

The Plaintiff was thirty years old at the time of the ALJ's decision. (Tr. 53).  At the time of filing for SSI, September 17, 2003, the Plaintiff alleged disability based on "prune belly syndrome," depression, severe migraines, and vision problems. (Tr. 66). Plaintiff's medical records confirm that he was born with "prune belly syndrome," a condition which can involve a lack of abdominal muscles, undescended testicles, and kidney problems. (Tr. 159, 162).  This condition has resulted in hematuria and frequent urinary tract infections. (Tr. 159).  Plaintiff has undergone two corrective surgeries due to his condition. (Tr. 162, 166).  In December 2001, he received a cytoscopy, and in June 2002 he underwent corrective surgery to repair severe penal

3

chordee. (Tr. 162, 166). Following the latter surgery, he was reported as "doing well" with "no problems at present." (Tr. 165).

In late 2002, Plaintiff visited a mental health center and was placed on Celexa, an antidepressant medication. (Tr. 203). During a follow-up in 2003, the physician recommended that he take Wellbutrin due to side effects caused by Celexa (Tr. 200). In June 2003, Plaintiff went back to the physician complaining of depression which arose due to problems with his partner. (Tr. 193). At this visit, he explained that he had run out of Wellbutrin and would like to begin taking it again. (Tr. 193). Plaintiff returned in July 2003 and reported that his condition had improved. (Tr. 191). A little over a year later, Plaintiff reported that he had not had any medication for months and that he was becoming depressed again. (Tr. 271). At this visit, he explained that Wellbutrin had improved his mood, his sleep, and his interests. (Tr. 271). In November 2004, Plaintiff was prescribed Prozac for his anxiety, and he later reported that this medication improved his anxiety symptoms. (Tr. 248).

In May 2003, Plaintiff visited Dr. Lisa Sykes in May of 2003 complaining of ringing in his ears and dizziness. (Tr. 175). At this visit, test results revealed that his hearing was normal with excellent recognition ability. (Tr. 175). In June 2003, Plaintiff saw Dr. Jeffrey Horn, complaining of visual blackouts and migraines. (Tr. 173). After examination, the physician concluded that he had no neurological abnormalities and opined that the headaches may be related to use of Tylenol. (Tr. 174). As such, he recommended that Plaintiff take Phenergan and reduce the usage of Tylenol. (Tr.188). After this visit, Plaintiff did not have any further visits with physicians complaining of headaches or vision problems.

4

On May 26, 2004, Dr. Roy Johnson conducted a consultative examination of Plaintiff in conjunction with his application for disability benefits. (Tr. 210-13). The consultative physician noted Plaintiff's prune belly syndrome as well as depression and a slight decrease of visual acuity. (Tr. 212-13). He concluded that Plaintiff should not lift occasionally more than 10 pounds and frequently more than 10 pounds. (Tr. 213). The physician further concluded that Plaintiff has no restrictions on sitting and that he could stand six hours of an eight-hour shift. (Tr. 213).

On June 1, 2004, Linda Blazina conducted a consultative psychological examination of Plaintiff. After conducting the examination, Ms. Blazina opined that Plaintiff's ability to understand and remember as well as his adaptation abilities did not appear to be significantly limited. (Tr. 218). However, she concluded that his ability to sustain concentration and persistence and his interaction abilities were mildly limited due to anxiety. (Tr. 218). The examiner rated Plaintiff as having a GAF of 65-70, indicating that his symptoms were mild in nature. (Tr. 217-18). A reviewing State Agency medical consultant also opined that Plaintiff's mental condition was nonsevere in nature on June 23, 2004. (Tr. 225-40).

During this psychological consultation, Plaintiff explained that he was able to do multiple activities which included bathing, driving (but not at night due to his vision problems), washing dishes, cooking, and laundry. (Tr. 217-18). Additionally, he reported that he manages his money adequately, including managing a checking account and balancing his checkbook. (Tr. 217). Furthermore, Plaintiff explained that he regularly attends church, sees his family regularly, and had no difficulty getting along with others. (Tr. 218). Nevertheless, he explained that he was

5

teased as a child due to his health problems and that he currently could not be around a lot of people because of nervousness and paranoia. (Tr. 218).

On June 11, 2004, Dr. Lanson Robbins, a State Agency physician, concluded that Plaintiff was able to lift up to twenty pounds occasionally and ten pounds frequently. (Tr. 220). Furthermore, the physician determined that Plaintiff could sit for about six hours in an eight hour work day as well as walk six hours in an eight hour work day. (Tr. 220). Indeed, the evidence indicated that claimant engaged in work activity since filling his application in September 2003. When he visited a mental health center in the fall of 2004, Plaintiff stated that he was doing landscaping work as well as working as a caretaker for his elderly aunt (Tr. 257). He also completed CNT training and began work at a nursing home, although he did not retain this job because he was not a "people person." (Tr. 248). It is unclear whether this work constitutes substantial gainful activity because his period of employment and earnings are unknown. In addition, Plaintiff reported working at Dell Computers in February of 2005 for one day. (Tr. 287).

At the March 1, 2006 hearing, Plaintiff testified that he had to quit his job at Dell Computers because his employer expected him to lift 40-50 pounds, a task which he was unable to complete due to his prune belly syndrome. (Tr. 286-87). After he completed one night of work at Dell, he explained that he "couldn't even move the next day." (Tr. 287). He contrasted this job with his job as a brass packer at Mueller Refrigeration which he held from March 1997 to November 1998. (Tr. 287-88). According to Plaintiff, his job as a brass packer involved sitting down and putting small parts in a box. (Tr. 288). His mother helped to explain the complications of this disease, relating that Plaintiff could not do strenuous work or lifting because this causes

6

pain and bleeding. (Tr. 297-98).  On the other hand, she opined that her son could lift small objects such as a gallon of milk. (Tr. 298).  His aunt further testified that Plaintiff could perform activities such as laundry and sweeping. (Tr. 302).

At the hearing, Plaintiff's own testimony suggested his ability to do certain types of work.  He said that he could work an eight hour day so long as there was no heavy lifting or prolonged standing involved. (Tr. 290, 292).  He explained that his lifting is limited to about fifteen pounds and that he is unable to do tasks which cause strain, stretch, or pull his abdominal muscles. (Tr. 291, 293).  He testified that he would be able to perform a job that involved mostly sitting and possibly an hour of standing each work day such as his previous job as a brass packer. (Tr. 289).  According to Plaintiff, his difficulty with standing is related to arthritis which causes his legs and arms to ache as well as prune belly syndrome. (Tr. 293). Nevertheless, Plaintiff testified that he goes shopping for his elderly aunt and goes places like the post office and the mall approximately once a month. (Tr. 295, 296).

Also at the March 1, 2006 hearing, vocational rehabilitation specialist Gordon Doss testified that Plaintiff could perform his past work as a hand packer. (Tr. 304).  The vocational expert further concluded that a person with Plaintiff's vocational limitations and vocational factors could perform a significant number of other existing jobs in the economy. (Tr. 303-05). Examples of such jobs include general office clerk, receptionist, and sedentary hand packer. (Tr. 304).  More specifically, the vocational expert indicated that there are over 165,000 of the named sample jobs in existence in the national economy, constituting a significant number of jobs. (Tr. 304-05).

On August 16, 2006, the ALJ issued a decision denying Plaintiff's claims for SSI (Tr. 14-19). The Plaintiff sought review of the ALJ's decision from the Appeals Council, and the Appeals Council denied Plaintiff's request on April 27, 2007. (Tr. 5-10). On March 11, 2008, Plaintiff entered a motion for judgment on the administrative record. (Docket Entry No. 21). Subsequently, Plaintiff sent multiple letters to the court detailing medical examinations which took place after the ALJ's original decision. (Docket Entries Nos. 25-31). In his first letter, Plaintiff alleged that he has been treated at Cumberland Mental Health for depression, anxiety, and bipolar disorder since March 2008. (Docket Entry No. 25). In his second letter to the court, Plaintiff explained that he was diagnosed as HIV positive by the Tennessee Department of Health in early October 2008 (Docket Entry No. 26). On October 17, 2008, Plaintiff submitted official documentation from the Tennessee Department of Health dated June 4, 2008 which diagnoses Plaintiff as HIV positive. (Docket Entry No. 29). Plaintiff sent several more letters to the court relating his continued treatment at Cumberland Mental Health with some supporting documentation of these visits (Docket Entries Nos. 31, 32, 35, 39). The Magistrate Judge construed the Plaintiff's recent letters filed with the court as a motion pursuant to the sixth sentence of 42 U.S.C. § 405(g) to remand for consideration of new evidence.

### III. CONCLUSIONS OF LAW

#### A. Motion to Remand for Consideration of New Evidence

The Magistrate Judge is initially confronted with deciding if the new evidence submitted by Plaintiff warrants remanding this matter for further consideration. According to 42 U.S.C. § 405(g), the Court may remand the case and order additional evidence to be taken into account upon a showing that there is new evidence which is material and that there is good cause for the

8

failure to incorporate such evidence into the record in the prior proceeding. The party seeking remand bears the burden of showing that remand is proper under 42 U.S.C. § 405(g). Additional evidence is material only if it pertains to the Plaintiff's condition prior to the date of the ALJ's original decision. *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1984). Furthermore, in order for Plaintiff to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. *See Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980).

In the instant case, Plaintiff has failed to show that the new evidence he presents is material. The evidence submitted by Plaintiff indicates that he was diagnosed as HIV positive on June 4, 2008. (Docket Entry No. 29). This diagnosis occurred almost two years after the ALJ's decision on August 16, 2006, and Plaintiff submitted no evidence that he was HIV positive prior to the ALJ's decision. Because there is no evidence which indicates that the new medical evidence pertains to the Plaintiff's condition prior to the date of the ALJ's original decision, this evidence does not meet the standard for materiality. *Oliver,* 804 F.2d at 966.

In addition to the new diagnosis of HIV, Plaintiff emphasized that he is entitled to benefits because his previous conditions have worsened since the ALJ rendered his original decision. (Docket Entry No. 21). For example, he claims that his visual impairment has become worse due to glaucoma in his right eye and that his depression has worsened during recent months. (Docket Entry No. 21). Although these claims may be true, additional evidence is material only if it pertains to the plaintiff's condition prior to the date of the ALJ's hearing decision, and evidence of subsequent deterioration of a condition will provide no basis for a

9

remand. *Oliver,* 804 F.2d at 966; *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). Should Plaintiff believe that his worsened conditions or his new HIV diagnosis establish his current disability, his appropriate remedy would be to file a new application for benefits.

Furthermore, Plaintiff has failed to satisfy the second prong of materiality, as he has not demonstrated a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore*, 865 F.2d at 711. The Sixth Circuit Court of Appeals has held that a mere diagnosis could not be the basis for a finding of disability, as this does not shed light on the severity of an individual's condition. *Higgs v. Bowen*; 880 F.2s 860, 863; *see also, Henry v. Gardner,* 381 F.2d 191, 194 ("The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant the award of benefits."). Furthermore, the Sixth Circuit has held that an appellant did not satisfy the materiality requirement for a sixth sentence remand because he lacked specific medical documentation which indicated the inability to perform his previous work. *Sizemore,* 865 F.2d at 712. Therefore, the Sixth Circuit requires that in order for evidence to be material as required by 42 U.S.C. § 405(g), a plaintiff must submit documentation indicating the severity of his condition such that it is reasonably probable that the Commissioner would have reached a different conclusion. *Id.*

Although Plaintiff has submitted evidence of a new diagnosis of HIV as well as documentation of subsequent visits to medical facilities, this evidence fails to imply that the Plaintiff's condition has worsened such that it would lead the Commissioner to find the Plaintiff to be disabled. Here, the new evidence submitted by plaintiff is limited to: 1) a diagnosis of

10

HIV; 2) one visit to the emergency room due to chest pain and vomiting; 3) visits to a mental health hospital; 4) receipt of new prescription medicines; and 5) Plaintiff's subjective assessment of pain and other symptoms. (Docket Entries Nos. 29, 31, 32, 34, 35-37). This evidence may suggest that Plaintiff is receiving treatment for his medical conditions, but it does not suggest that Plaintiff's condition has worsened such that it is disabling according to the social security regulations. Plaintiff has not submitted any medical assessment of his ability to function or complete daily tasks nor any evidence in which a health care professional concludes that Plaintiff is unable to work. Thus, this new evidence is immaterial to the ALJ's decision because the evidence does not pertain to Plaintiff's condition prior to the decision and because it does not establish a reasonable probability that the Commissioner would have reached a different conclusion based on this new evidence.

### B. Motion for Judgment on the Administrative Record

### 1. Standard of Review

Having recommend denial of Plaintiff's motion to remand, the Magistrate Judge must now consider Plaintiff's motion for judgment on the administrative record. The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary,* 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary,* 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner,* 203 F.3d 388, 389 (6th Cir. 1999)

11

(citing *Richard v. Perales,* 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her,* 203 F.3d at 389 (*citing Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary,* 753 F.2d 517, 519 (6th Cir. 1985).

### 2. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1.  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2.  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3.  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments (20 C.F.R., Pt. 404, Subpt. P, Appendix 1) or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4.  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him

12

or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5.    Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary,* 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff essentially alleges two errors in the ALJ's decision.  First, the ALJ improperly determined that Plaintiff does not have an impairment or combination of impairments of the level

13

of severity required by the regulations. (Docket Entry No. 21). In contrast, Plaintiff asserts that the severity of his illnesses, including prune belly syndrome, carpal tunnel syndrome, arthritis, cataract, migraines, depression, and anxiety, should entitle him to Social Security benefits. (Docket Entry No. 21). Second, Plaintiff contends that the ALJ reached an incorrect conclusion regarding his residual functional capacity (RFC). (Docket Entry No. 21). However, despite the presence of severe impairments, substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Social Security Act.

With respect to his first argument, Plaintiff emphasizes that he suffers from severe musculoskeletal defects and arthritis due to prune belly syndrome, and these impairments should be considered significant pursuant to the social security regulations. (Docket Entry No. 21). Indeed, the ALJ determined that Plaintiff has a severe combination of impairments that includes prune belly syndrome, with significant work-related limitations such as the inability to perform heavy lifting. (Tr. 17). Nevertheless, substantial evidence supports the ALJ's conclusion that Plaintiff's musculoskeletal impairments do not rise to the level of severity required by 20 CFR Part 404, Subpart P, Appendix 1. When evaluating musculoskeletal impairments, the Social Security Regulations provide that, "functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02(a). Section 1.00(B)(2)(b) defines the inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e. an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.

14

It is clear from the record the Plaintiff is able to ambulate effectively and thus does not suffer from functional loss due to musculoskeletal impairments. During a consultation with Dr. Johnson, it was revealed that Plaintiff had a full range of motion of the spine, shoulders, elbows, wrists, hips, knees, and ankles. (Tr. 212). Also, Plaintiff could squat, rise, and balance on one foot. (Tr. 212). Furthermore, the physician concluded that Plaintiff did not suffer from swelling of the joints and that he had full grip strength. (Tr. 212). Perhaps most importantly, Plaintiff's routine activities and work history, discussed *infra,* reveal that Plaintiff can ambulate effectively despite any musculoskeletal impairments that may be present.

In addition to assessing Plaintiff's diagnosis with regard to musculoskeletal impairments, the ALJ also properly considered Plaintiff's pain related to these impairments pursuant to Social Security Regulation 416.929 and Social Security Ruling 96-7p. During many consultations, Plaintiff told physicians that he was not suffering from pain. (Tr. 191, 193, 251, 260). Furthermore, he has not been prescribed any medication that indicates severe pain; instead it was recommended that he has been prescribed over-the-counter pain medicine such as Tylenol. (Tr.188). Significantly, the ALJ pointed out that the evidence fails to establish that Plaintiff has any arthritis or carpal tunnel syndrome, as there is no medical assessment in the record which states that Plaintiff had these illnesses. This reinforces the ALJ's conclusion that any musculoskeletal problems did not rise to the level of severity required by the Regulations.

Similarly, the ALJ properly concluded that Plaintiff's limitations caused by his mental impairments including depression and anxiety are not disabling under the Social Security Act. The Sixth Circuit has consistently held that a condition remediable through medication or treatment is not disabling for purposes of a social security determination. *See, e.g., Harris v.*

15

*Heckler,* 756 F.2d 431, 436 n.2 (6th Cir. 1985) (citing *Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir. 1985)). The record indicates that Plaintiff's mental impairments have been largely treated through medication, providing substantial evidence to support the ALJ's conclusion that these impairments are not disabling. (Tr. 191). In late 2002, Plaintiff visited a mental health center and was placed on Celexa, an antidepressant medication. (Tr. 2003). During a follow-up in 2003, the physician recommended that he take Wellbutrin due to sexual side effects of Celexa (Tr. 200). Subsequently, Plaintiff related to his physician that his depression was much improved. (Tr. 191). The Plaintiff's improvement is supported by a consultation in June 2004, when Plaintiff was determined to have a GAF of 65. (Tr. 217-18). This score indicates that Plaintiff has some mild symptoms, but generally functions well. Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV), 32 (4th ed. 1994). The reviewing State Agency medical consultant further opined that Plaintiff's mental condition was nonsevere in nature on June 23, 2004. (Tr. 225-40). In August 2004, Plaintiff again explained to a physician that Wellbutrin was very helpful, as it improved his mood, his sleep, and his interests. (Tr. 271). Additionally, Plaintiff indicated improvement after he was placed on Prozac for his anxiety in 2005. (Tr. 248). Plaintiff's improvement in response to medication, confirmed by the assessments of physicians, support the ALJ's conclusion that Plaintiff's mental impairments are mild in nature. (Tr. 17).

Plaintiff further emphasizes the severity of his migraine headaches, but the record suggests that this problem has not been disabling. In May and June 2003, Dr. Patrick Lavin opined that Plaintiff's headaches were likely caused by an overuse of Tylenol. (Tr. 187). Dr. Lavin thus prescribed Phenergan as abortive therapy and recommended that Plaintiff reduce the use of Tylenol (Tr. 188). To further support this diagnosis, an MRI of plaintiff's head was

16

normal and the result of a neurologic examination were also normal. (Tr. 171, 174). Finally, in Plaintiff's pleadings, Plaintiff indicates that prescription medications have been successful in improving his headaches.[1] (Docket Entry No. 21). Although there is no evidence in the record which documents such prescriptions, the claimed ability of these medications to improve Plaintiff's condition supports the ALJ's conclusion that his headaches are not disabling under the Social Security Act.

Finally, substantial evidence supports the ALJ's conclusion that Plaintiff does not suffer from disabling visual problems. (Tr. 17). On June 5, 2003, Dr. Jeffrey Horn determined that Plaintiff had a small cataract in his left eye. (Tr. 187). Nevertheless, the record fails to indicate that this problem has been disabling to Plaintiff. In fact, an examination on May 26, 2004 revealed that Plaintiff does not suffer from a severe loss of vision. (Tr. 212). With corrective lenses, he had 20/30 vision in his right eye, 20/20 vision in his left eye, and 20/25 vision in both eyes. (Tr. 212). Moreover, his pupils were reported to be equal, round, regular, and reacted to light (PERRL) and his extraocular muscles were intact. (Tr. 212). On June 10, 2004, a physician remarked that Plaintiff "wore glasses to complete the interview and his corrected vision appeared adequate." (Tr. 215). Even in his motion for judgment on the administrative record, Plaintiff explains that his cataract limits his sight only "a bit." (Docket Entry No. 21). This evidence supports the ALJ's conclusion that Plaintiff does not suffer from a disabling visual impairment.

With regard to Plaintiff's second argument, Plaintiff's disputes the ALJ's determination regarding his residual functional capacity. (Docket Entry No. 21). Plaintiff claims that it is

---

[1] Plaintiff states that he was prescribed two medications for migraines but that he has been without them since 2005 due to the loss of Tenncare coverage. Because he is not unable to

17

difficult for him to find appropriate work because he is unable to lift anything over ten pounds. (Docket Entry No. 21).   When combined with his carpal tunnel syndrome and arthritis, Plaintiff claims that it would be impossible to do even office or clerical work. (Docket Entry No. 21). Despite these claims, substantial evidence supports the ALJ's conclusion that Plaintiff was able to perform sedentary unskilled work that allows for a sit or stand option and had limited postural activities like bending (Tr. 17).

The most compelling evidence supporting the ALJ's conclusion regarding Plaintiff's RFC has come from the Plaintiff himself.  During the administrative hearing, Plaintiff testified that he could perform his past work as a brass packer, a job which entailed placing small parts in a box while in a seated position. (Tr. 288-89).  In addition, Plaintiff stated that he was probably able to perform the cashier part of his job at a grocery store (Tr. 288-90).  More broadly, he testified that he could work an eight hour day so long as there was no heavy lifting or prolonged standing involved. (Tr. 290, 292). When the Plaintiff applied for a job at Dell Computer in February 2005, he applied for any job that did not involve lifting anything over fifteen pounds. (Tr. 287).  Finally, at the administrative hearing, Plaintiff's mother testified that Plaintiff could lift small objects such as a gallon of milk. (Tr. 298).  Moreover, his aunt testified that Plaintiff could perform activities such as laundry and sweeping. (Tr. 302). These statements from the Plaintiff and his family provide evidence of Plaintiff's belief that he could perform work consistent with the RFC found by the ALJ.

In addition to these statements, Plaintiff's previous work and his activities support the

---

receive Tenncare, Plaintiff explains that he can no longer control the migraines, thus implying that the prescription medications were useful in treating this impairment. (Docket Entry No. 21).

18

ALJ's determination that plaintiff can perform a limited range of sedentary work. During a medical consultation in the fall of 2004, Plaintiff revealed that he was doing landscaping work as well as working as a caretaker for his elderly aunt (Tr. 257). Later in November 2004, Plaintiff completed a training program to become a certified nurse technician. (Tr. 256). Not only did this previous work activity support Plaintiff's ability to perform at least sedentary work, but also his personal activities shed light on the same. During this psychological consultation, Plaintiff explained that he was able to do multiple activities which include bathing, driving, washing dishes, making the bed, cooking, and laundry. (Tr. 217-18). Additionally, he reported that he manages his money adequately, which involves maintaining a checking account and balancing his checkbook. (Tr. 217). Furthermore, Plaintiff explained that he attends church and sees his family regularly, going out to eat with them at least once or twice a month. (Tr. 217-18).

Not only do Plaintiff's communications and activities support the ALJ's conclusion, but also professional medical opinions provide such support. On July 13, 1999, Dr. Victor Baren opined that even though Plaintiff should not do strenuous, physical labor, he may be suitable for clerical, non-physically strenuous employment (Tr. 287). On May 26, 2004, Dr. Roy Johnson determined that Plaintiff had no restrictions on sitting and that he could stand six hours of an eight-hour shift. (Tr. 213). He concluded that Plaintiff could frequently lift up to ten pounds. (Tr. 213). On June 11, 2004, Dr. Lanson Robbins similarly concluded that Plaintiff was able to lift up to twenty pounds occasionally and ten pounds frequently. (Tr. 220). Furthermore, the physician determined that Plaintiff could sit for about six hours in an eight hour work day as well as walk six hours in an eight hour work day. (Tr. 220). This evidence is consistent with the opinion of vocational expert Gordon Doss, who testified that a person with Plaintiff's vocational

19

limitations and vocational factors could perform a significant number of other existing jobs in the economy, including general office clerk, receptionist, and sedentary hand packer. (Tr. 303-05).

With regard to Plaintiff's depression and anxiety, substantial evidence supports the ALJ's conclusion that his mental impairments resulted in only a mild restriction in his daily activities, a mild impairment in his social functioning, a mild limitation in his ability to maintain concentration, persistence, or pace, and no episodes of decompensation or deterioration of extended duration. (Tr. 17). On June 1, 2004, Linda Blazina conducted a consultative psychological examination of Plaintiff, concluding that Plaintiff's ability to understand and remember as well as his adaptation abilities did not appear to be significantly limited. (Tr. 218). The examiner rated Plaintiff as having a GAF of 65-70, indicating that his symptoms were mild in nature. (Tr. 217-18). On June 23, 2004, a State Agency medical consultant also concluded that Plaintiff's mental condition was nonsevere in nature on June 23, 2004. (Tr. 225-40).

As previously discussed, it is significant that medication has helped to relieve the Plaintiff's depression and anxiety, thus further supporting the ALJ's conclusion that these mental impairments are mild in nature. In November 2002, Plaintiff began taking Wellbutrin and incidentally related to his physician that his depression was much improved. (Tr. 191). Plaintiff did not return to the doctor until August 2004, at which point he again explained that Wellbutrin improved his mood, his sleep, and his interests. Finally, Plaintiff reported that his anxiety improved after taking Prozac. (Tr. 270). Because a condition which can be remedied through medication or treatment is not disabling under the Social Security Act, Plaintiff's improvement in response to medication further supports the ALJ's conclusion regarding Plaintiff's RFC. *See,*

*e.g., Harris v. Heckler,* 756 F.2d at 436 n.2 (citing *Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir. 1985)).

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's motion to remand for reconsideration of new evidence be DENIED, that Plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc)).

ENTERED this 2nd day of April, 2009.

/S/Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

21